# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00380-CR

**Joe Capuchino, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT
### NO. 3013073, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

After a bench trial in April 2002, appellant Joe R. Capuchino was convicted of the offense of aggravated assault with a deadly weapon and sentenced to ten years= imprisonment. *See* Tex. Pen. Code Ann. ' 22.02(a)(2) (West 2003). In a single issue, Capuchino challenges the legal and factual sufficiency of the evidence to support the deadly-weapon finding. We will affirm the judgment of the trial court.

### BACKGROUND

Criminal charges were filed against Capuchino after his common-law wife, Sandra Castilleja, suffered severe physical violence and abuse one evening in August 2001. Castilleja claimed that Capuchino attacked her. She testified that sometime during that evening, Capuchino accused her of

infidelity and began acting violently. He started by forcefully pushing her into their bedroom, where he berated her and began beating her. Then over a period of several hours, he slapped her, repeatedly punched her face, and kicked her. He also poured ice water onto her back, whipped her with a belt, and hit her with a water jug. At one point, he retrieved a large knife from the kitchen, lightly cut one of her wrists, held the knife to her throat as he insulted her, and cut swaths of her hair. She screamed and cried throughout the ordeal but was unable to escape. All of this occurred while their two-year-old son remained in the next room.

Capuchino abated his rampage at some point late the next morning and abruptly left home with the child. Because she did not have phone service, Castilleja went to a neighbor=s house and called her mother to ask for help. Her mother, aunt, and uncle arrived as Capuchino was returning home with the child. Her mother and aunt testified that Castilleja appeared injured and visibly shaken, and that Capuchino insulted and intimidated them. Castilleja then gathered a few items from the house and left with her son, mother, and other relatives.

Later that day, Castilleja was treated at the hospital for a cut wrist, damaged ear drums, and bruises and welts on her face, back, and neck. While at the hospital, she filed a police report detailing the events of the previous evening. Castilleja=s injuries were described by several prosecution witnesses: her mother was alarmed by the visible bruising on Castilleja=s face and neck and the Astrap marks all over her back@; her aunt testified about Castilleja=s chopped hair and her damaged ears.

At trial, Capuchino contested Castilleja=s version of the events. He testified that despite a

protective order that prohibited her from doing so,[1] Castilleja came to his house the day before the alleged assault. He then claimed that when he arrived home the next evening, he discovered Castilleja and a woman named Mary, whom he described as a known drug abuser, injecting drugs. He declined to participate and asked them to leave his home. When they refused, he left and attended a Narcotics Anonymous meeting. He then took a long walk and ended up sleeping under a bridge. When he returned home in the morning, he was outraged to find Castilleja with her mother and aunt packing up some of his things. He expressed his anger, but did not assault Castilleja as she alleged.

**DISCUSSION**

The indictment charged Capuchino with aggravated assault by use and exhibition of a deadly weapon. A person commits the crime of assault if he (1) intentionally, knowingly, or recklessly, (2) causes bodily injury to another. *See* Tex. Pen. Code Ann. ' 22.01(a)(1) (West 2003). If a person uses or exhibits a deadly weapon during the commission of an assault, he can be convicted of aggravated assault. *See id.* ' 22.02(a)(2). Capuchino contends that the evidence of his use of a deadly weapon was legally and factually insufficient. His contention is based on the absence of certain evidence: the alleged knife was not produced, Castilleja=s allegedly cut hair was not produced, and the medical records do not describe injuries attributable to a knife or other deadly weapon.

A knife is not inherently harmful, but the State can, without expert testimony, prove a particular knife to be a deadly weapon by showing the manner of its use or intended use and its capacity to

---

[1] No protective order was introduced as an exhibit at trial.

3

produce death or serious bodily injury. *Blain v. State*, 647 S.W.2d 293, 294 (Tex. Crim. App. 1983). An object is a deadly weapon if the actor intends a use of the object in which it would be *capable* of causing death or serious bodily injury. *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000).

This Court has the authority to review a case upon both the law and the facts. *See Clewis v. State*, 922 S.W.2d 126, 131-32 (Tex. Crim. App. 1996). In a legal sufficiency review, a court must look at the relevant evidence in the light most favorable to the verdict and determine whether a rational finder of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). The trier of fact is entitled to resolve any conflicts in the evidence, to evaluate the credibility of witnesses, and to determine the weight to be given any particular evidence. *See Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996). Any inconsistencies in the evidence should be resolved in favor of the verdict. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). This standard of review is the same for both direct and circumstantial evidence. *See Green v. State*, 840 S.W.2d 394, 401 (Tex. Crim. App. 1992).

Factual sufficiency, by contrast, requires the reviewing court to view the evidence Awithout the prism of >in the light most favorable to the prosecution.=@ *Clewis*, 922 S.W.2d at 129. There are two prongs to a factual sufficiency review: the reviewing court must ask (1) whether the state=s evidence, taken alone, is so weak that it renders the adverse finding clearly wrong or manifestly unjust; and (2) whether the proof of guilt, although adequate if taken alone, is against the great weight and preponderance of the evidence. *See Zuliani v. State*, No. 1168-01, slip op. at 5, 8, 2003 Tex. Crim. App. LEXIS 26, at *6, 11 (Feb. 5, 2003); *Johnson*, 23 S.W.3d at 11. A factual sufficiency review must employ appropriate

4

deference to the fact finder=s role as the sole judge of the weight and credibility to be given to witness testimony. *Johnson*, 23 S.W.3d at 7.

Capuchino=s argument rests on the following facts: that no knife was entered into evidence, that the cut hair was not recovered from the scene, and that no hospital records describe any injuries caused by a knife. He claims that these facts render the evidence that he used or exhibited a deadly weapon during the attack legally and factually insufficient. We disagree.

The allegation that Capuchino used a knife in his attack is amply supported by the evidence. The state produced, among other things, photographs and testimony regarding Castilleja=s chopped hair. Castilleja testified, A[h]e grabbed my hairChe just grabbed the knife and cut it. It looked like a boy=s hair cut in the back.@ This was corroborated by other witnesses. Castilleja=s mother testified that her daughter=s hair was Astill left long in the front and it was cut real high from the back,@ and that it was Areal close to her scalp.@ Her aunt said Athe first thing I noticed on my niece was her hair,@ which was Achopped@ and noticeably different than it had been a few days earlier.

Additionally, the allegation that the knife was used or exhibited as a deadly weapon is amply supported by the evidence. Castilleja testified that, after a substantial beating, Capuchino held her hand behind her back, warned her that Athis is going to hurt@ and ran the knife across her wrist, causing it to bleed. She pleaded for mercy, fearing that she was Agoing to die.@ He then held the knife Aright under [her] neck@ and held it there so that it Afelt like it was burning.@ The fact finder was warranted in concluding from

5

Castilleja=s testimony that Capuchino intended to use the knife in a manner that would be capable of causing death or serious bodily injury. The hospital records do not detract from Castilleja=s claim.[2]

Viewed in the light most favorable to the verdict, the evidence clearly indicates that Capuchino used a knife to threaten, scare, and injure Castilleja during an assault that lasted many hours. Castilleja=s relatives testified to her injuries. They also described her Ahaircut,@ claiming that her hair looked Abad,@ and that it was Achopped.@ Additional evidence indicating that Capuchino used a knife includes a photograph of Castilleja=s cut wrist and descriptions of the cut by police officers. We find that a rational trier of fact could have found beyond a reasonable doubt that Capuchino used or exhibited a knife as a deadly weapon during the assault, and we therefore conclude the evidence is legally sufficient to support the deadly-weapon finding.

---

[2] Although the hospital records do not specifically reference the cut wrist or cut hair, this does not suggest that such injuries did not occur. The hospital=s emergency-room personnel focused on her more threatening and treatable conditions. The cut wrist was superficial and the cut hair did not require medical attention.

Moreover, the evidence is clearly sufficient to meet the first prong of our factual sufficiency review. The state=s evidence that a knife was used as a deadly weapon during the assault was not so weak as to render the judge=s finding clearly wrong or manifestly unjust. *See Zuliani,* 2003 Tex. Crim. App. LEXIS 26, at \*6, 11. Under the second prong of a factual sufficiency review, we must ask whether the proof of guilt, although adequate if taken alone, is against the great weight and preponderance of the available evidence. *See id*. This normally would require us to consider Capuchino=s evidence tending to negate the court=s finding; however, in this appeal, Capuchino does not rely on his testimony that he was not home that night.[3] Instead, he relies exclusively on gaps in the state=s evidence: that no knife was found, that no hair was entered into evidence, and that the hospital records do not describe wounds attributable to a knife.

None of these absences render the evidence legally or factually insufficient. The physical absence of the knife and hair, considered in conjunction with the hospital records, is not enough to cause us to reverse the judge=s verdict. The judge was in a unique position to evaluate the credibility of the witnesses and to weigh the evidence**C**a position that we are unable to duplicate. *See Johnson*, 23 S.W.3d at 9. We conclude the evidence is factually sufficient to support the deadly-weapon finding.

**CONCLUSION**

Finding the evidence legally and factually sufficient to support the finding that a deadly weapon was used or exhibited during the commission of the assault, we affirm the trial court=s judgment.

---

[3] Capuchino does not challenge the sufficiency of the evidence that the assault occurred or that he was the perpetrator.

7

_____

Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed

Filed:   March 27, 2003

Do Not Publish